UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| BILL REED, | § | |
|     PLAINTIFF | § | |
| vs. | § | CIVIL ACTION NO. |
| | § | |
| DAN HUERTER, BROCK WOOD AND | § | |
| PAVEL CHERKASHIN, | § | 1:23-cv-00720 |
|     DEFENDANTS. | § | |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

NOW COMES Plaintiff, Bill Reed ("Plaintiff"), filing this his Second Amended Complaint against Dan Huerter ("Huerter"), Brock Wood ("Wood") and Pavel Cherkashin ("Cherkashin") collectively referred to as "Defendants" herein, pursuant to Fed. R. Civ. P. 15(a)(1)(A), et seq., alleging claims for "unjust Enrichment" and (alternatively) Quantum Meruit, respectfully showing this Honorable Court the following:

## PARTIES

1. Plaintiff, Bill Reed ("Plaintiff") is a licensed attorney residing in the State of Georgia.

2. Defendant, Dan Huerter ("Huerter") is an individual residing in the State of Kansas. Huerter has appeared herein by filing an Answer on September 18, 2023 and is under the jurisdictional authority of this Court.

3. Defendant Brock Wood, ("Wood") is an individual residing in the State of Kansas. Wood has appeared herein by filing an Answer on September 18, 2023 and is under the jurisdictional authority of this Court.

Bill Reed vs. Dan Huerter, Brock Wood and Pavel Cherkashin
Civil Action No. 1:23-cv-00720
Plaintiff's Second Amended Complaint      Page 1 of 15

4. Defendant Pavel Cherkashi, ("Cherkashin") is an individual residing in the State of California. He has appeared herein by filing an Answer on May 12, 2023 and is under the jurisdictional authority of this Court.

## JURISDICTION AND VENUE

5. Plaintiff's Unjust Enrichment and Quantum Meruit claims against the individual Defendants, respectively, are based upon the substantial benefits received by each of the Defendants as a result of Plaintiff's professional (legal) services. Such services were primarily provided by Plaintiff from his offices in Woodstock, Georgia. Plaintiff continued those services in Evergreen, Colorado, by assisting them with the transition of the management and control over Pure Spectrum CBD, LLC ("Pure Spectrum") from the complete (i.e., 100%) control by a single-Manager, Brady Bell ("Bell"), to a four (4)-member Manager team, consisting of Defendants (i.e., who collectively held a 98.5% share of management/control) along with Bell, all at the request and assistance of Defendants. Through Plaintiff's extensive efforts, each respective Defendant received valuable rights and benefits having a value well in excess of this Court's $75,000 minimum amount in controversy, as follows:

(a) Cherkashin was substantially enriched, and received valuable rights and benefits having a value well in excess of this Court's $75,000 minimum amount in controversy, when he became a controlling Manager over Pure Spectrum—a position he attained as a direct result of Plaintiff's extensive professional services. At that time, Cherkashin owned and/or controlled a majority ownership interest an entity known as "Mindrock." Mindrock held a seven-figure+ Judgment against Pure

Bill Reed vs. Dan Huerter, Brock Wood and Pavel Cherkashin
Civil Action No. 1:23-cv-00720
Plaintiff's Second Amended Complaint                                    Page 2 of 15

Spectrum, but Cherkashin (together with Defendants Huerter and Wood) believed that Mindrock's seven-figure Judgment was uncollectable as long as Pure Spectrum was under Bell's sole-leadership; however, by becoming part of a controlling group of managers (i.e., Defendants) Cherkashin was positioned to prioritize and secure the judgment- creditor interests of Cherkashin over other-competing Pure Spectrum creditors. Cherkashin used his position to reorganize and prioritize Pure Spectrum's financial priorities, reshape its management structure and marketing focus, and adopt a new business plan which prioritized Cherkashin's financial interests in Pure Spectrum, having a perceived value in excess of $2,000,000. Plaintiff would show that Defendant Cherkashin immediately used his newly acquired position to garnish the entire balance of Pure Spectrum's operating account, which, on information and belief, had a balance in excess of $100,000. Then, Cherkashin used the additional control over Pure Spectrum's seized-cash reserves, *together with his newly-acquired position as a Manager over Pure Spectrum*, to exert *additional* control over Pure Spectrum, to his own personal advantage. Altogether, Cherkashin received benefits, as a direct result of Plaintiff's efforts, having a monetary value to Cherkashin of an amount far in excess of for his part- time, remotely provided management services.

(b) Defendant Wood was substantially enriched, and received valuable rights and benefits when he became a controlling Manager over Pure Spectrum—a position he attained as a direct result of Plaintiff's extensive professional services. Defendant Wood accepted, appreciated and benefitted by and through Plaintiff's services in at

Bill Reed vs. Dan Huerter, Brock Wood and Pavel Cherkashin
Civil Action No. 1:23-cv-00720
Plaintiff's Second Amended Complaint                    Page 3 of 15

least two (2) ways, to wit: (1) At that time, Defendant Wood was as a 10% equity owner of the Company. Defendant Wood, (together with Defendants Huerter and Cherkashin) believed that his equity ownership was worthless as long as Pure Spectrum was under Bell's sole-leadership; however, by becoming part of a controlling group of managers (i.e., Defendants) Wood was positioned to (and did, in fact), prioritize, secure and even increase his own percentage ownership share(s) of equity ownership, (2) Defendant Wood used his newly-acquired position as a controlling Manager of Pure Spectrum to put himself on Pure Spectrum's payroll as a paid 'executive officer' of Pure Spectrum, a part- time, remote position—for a total compensation package including a six-figure employment agreement.  Notably, Defendant Wood was financially-enriched, as a result of Plaintiff's services, in two (2) separate ways—each of which having a monetary value far in excess of this Court's $75,000 minimum amount in controversy for cases founded upon diversity jurisdiction.

(c) Defendant Huerter was substantially enriched, and received valuable rights and benefits when he became a controlling Manager over Pure Spectrum—a position he attained as a direct result of Plaintiff's extensive professional services.  Huerter accepted and received valuable rights and benefits through Plaintiff's services in several ways: (1) First, Huerter was installed as the Company's "Lead" Manager, with the highest percentage managerial interest (at 34%) among all of the company's Managers. Acting together with Defendants Wood and Cherkashin, Defendant

Bill Reed vs. Dan Huerter, Brock Wood and Pavel Cherkashin
Civil Action No. 1:23-cv-00720
Plaintiff's Second Amended Complaint                                    Page 4 of 15

    Huerter received an employment agreement, as Pure Spectrum's new CEO, including a six-figure salary in exchange for his part-time, remotely provided management services. (2) Second, and just like Defendant Wood, Huerter received a compensation 'bonus' of in the form of a 14.02% ownership share in Pure Spectrum and, on information and belief, Huerter's girlfriend was also placed on Pure Spectrum's payroll for substantial compensation. Altogether, Defendant Huerter was financially-enriched through Plaintiff's services, in at least two (2) separate ways—each of which having a monetary value far in excess of this Court's $75,000 minimum amount in controversy for cases founded upon diversity jurisdiction.

6. The amount(s) in controversy under each of Plaintiff's claims far exceed(s) the minimum amount in controversy limits of this Honorable Court, this Court has subject matter jurisdiction over the Plaintiff's claimsunder 28 U.S. Code § 1332 (a), *et seq.*

7. Venue is proper in this District under 28 U.S.C. §§ 1391(b) (2). A substantial part of the events or omissions giving rise to the claim occurred in Evergreen, Colorado, which is within this District. Defendants have each, respectively, served as the "Manager(s)" of Pure Spectrum, from the basis of their homes and from Pure Spectrum's headquarters in Evergreen, Colorado. Plaintiff's services were rendered (in substantial part) in Evergreen, Colorado and Defendants have each also used and enjoyed the benefits conferred upon them by and through Plaintiff's legal services in Evergreen.

Bill Reed vs. Dan Huerter, Brock Wood and Pavel Cherkashin
Civil Action No. 1:23-cv-00720
Plaintiff's Second Amended Complaint    Page 5 of 15

## SUMMARY STATEMENT OF CASE

8.     In this case, Plaintiff asserts two (2) claims: the first is a claim under the theory of Unjust Enrichment—for the value of benefits accepted and received by each of the above-named Defendants, which each Defendant (respectively) received, accepted and enjoyed at Plaintiff's sole expense, and for which Plaintiff has never been compensated. Alternatively, Plaintiff seeks recovery under the theory of Quantum Meruit for the reasonable and fair value of legal services and expenses provided to Defendants by Plaintiff, for which Defendants have never paid.

## FACTUAL BASIS OF CLAIMS

9.     In the months/years leading up to the summer of 2021, the operational integrity and financial future of the company were being threatened by the Company's sole Manager, Bell.

10.    As enumerated and described in Paragraph 5, above, each Defendant each had specific and unique (individual) concerns and interests relating to Pure Spectrum and each (for their respective individual reasons) wanted to 'take-over' the control of Pure Spectrum from Bell; however, Pure Spectrum's Operating Agreement, crafted by Peter Moore of the Denver, Colorado law firm, Robinson, Waters and O'Dorisio ("RWO"), was highly structured so as to *almost entirely* eliminate the opportunity for anyone other than the Company's sole manager, an individual named Brady Bell, to operate the company.

11.    Starting in July 2021, and in response to Defendants' respective individual (expressed) concerns, and specifically upon Defendant Huerter's request and authorization, Plaintiff analyzed the sole-manager-focused Operating Agreement and put together a strategic plan under which each of the Defendants could assume (i.e., take over) operational control of the company and

Bill Reed vs. Dan Huerter, Brock Wood and Pavel Cherkashin
Civil Action No. 1:23-cv-00720
Plaintiff's Second Amended Complaint                                Page 6 of 15

become its new controlling 'Managers.'

12. Throughout July and August 2021, Plaintiff contacted all of the company's recognized member-owners, building a consensus for the takeover plan and, specifically, the appointment of each of the individual Defendants as the company's new "Managers".

13. In late August 2021, Plaintiff (a) negotiated (i.e., with approximately 10-12 other member owners), (b) drafted a proposed Members' Agreement, (c) obtained the approval of the necessary quorum of members and then (d) accompanied Defendants Huerter and Cherkashin to Evergreen to assist with all aspects of their assumption of control.

14. Plaintiff assisted Defendants in a wide range of activities relating to Defendants' takeover, and continued providing valuable services to Defendants during the actual takeover in late August 2021 and for several weeks thereafter.

15. Plaintiff's efforts resulted in the positioning of each Defendant, as a Manager of Pure Spectrum. Through that position, each of the Defendants received valuable compensation, operational control and employment-related benefits from the company, including but not limited to (a) six-figure compensation agreements from the company, (b) 'bonused' ownership interests and (c) control over the company (collectively described herein as "valuable benefits") and the position to control and prioritize the company's payments to its creditors—including a 7+ figure debts owed by the company to a Russian investment fund known as "Mindrock Capital and/or "1280 Ventures, LLC," an entity purportedly owned and controlled by Defendant Cherkashin.

16. The total value of those valuable benefits to each Defendant, respectively, ranges between six and seven figures—as more specifically described and detailed in Paragraph 5,

Bill Reed vs. Dan Huerter, Brock Wood and Pavel Cherkashin
Civil Action No. 1:23-cv-00720
Plaintiff's Second Amended Complaint                    Page 7 of 15

above.

## COUNT I: UNJUST ENRICHMENT

17. Paragraphs 1 through 16, above, are incorporated herein by reference for all purposes, the same as if fully set forth at length herein *verbatim*.

18. Prior to July 2021, PureSpectrum's operations were in a state of chaos. There was a rising level of discontent and hopelessness among the company's owners and creditors, based mostly on the commonly-held perception that the company's Manager and largest percentage owner, Brady Bell ("Bell"), was acting erratically, irresponsibly and entirely for his own (individual) self-interests, and to the detriment of the company's other owners and creditors.

19. During this same time period, Defendant Wood resigned his high-ranking position, with a six-figure compensation package, as the company's operations manager.

20. Defendant Wood owned a 10% equity ownership interest in the company.

21. On information and belief, Defendant Wood was out-of-work (unemployed) in August 2021. He had expressed a desire to partner with Defendant Huerter in a take-over of the company if that were possible, both for the income potential and also to protect and possibly increase his ownership share of the company. However, Wood expressed that there was nothing he could do as long as Bell was positioned as the sole-Manager of the company.

22. Like Defendant Wood, Defendant Huerter was also a former (i.e., resigned) employee of the company. He had served as the company's Chief Operating Officer during the Company's formation and throughout much of its growth into a significant and well-known CBD-products company with annual sales of approximately $3,000,000+. Defendant Huerter had a good

Bill Reed vs. Dan Huerter, Brock Wood and Pavel Cherkashin
Civil Action No. 1:23-cv-00720
Plaintiff's Second Amended Complaint                                    Page 8 of 15

reputation among Pure Spectrum's other owners, even after he left the company.

23. Like Defendant Wood, Huerter had (and expressed) a strong interest and willingness to resume his employment and/or control of the company in exchange for a significant compensation package (i.e., including a six-figure paycheck and 'bonused' ownership interests). Also like Defendant Wood, Defendant Huerter was at odds with Bell, and believed that Pure Spectrum would become exponentially more valuable if he (and Defendant Wood) could replace Bell in running the company.

24. Defendant Cherkashin had a large vested interest in the company—valued in excess of $2,000.000--as the result of the direct investment of funds from Defendant Cherkashin's investment group, known as "Mindrock." Defendant owned and controlled Mindrock, and Mindrock held a Judgment against Pure Spectrum for an amount of approximately $1.7 million, which made Mindrock one of Pure Spectrum's most significant (i.e., seven-figure) judgment creditors.

25. From Defendant Cherkashin's perspective, there seemed to be almost no prospect that that judgment could ever be satisfied without a substantial change in the management and control of the company. Therefore, Cherkashin expressed a strong interest in becoming a controlling part of the Pure Spectrum's management team. Also, like Defendants Wood and Huerter, Defendant Cherkashin was at odds with Bell.

26. Acting, at first, at the request and encouragement of Huerter and later with the agreement, authority and support of both Cherkashin and Wood, Plaintiff expended substantial efforts through his efforts to confer valuable benefits upon each of the Defendants, respectively, by conceiving, designing, negotiating and assisting Defendants in the execution of a plan whereby

Bill Reed vs. Dan Huerter, Brock Wood and Pavel Cherkashin
Civil Action No. 1:23-cv-00720
Plaintiff's Second Amended Complaint                                    Page 9 of 15

Defendants each became the controlling Managers of the company. Defendants were each substantially, respectively and uniquely enriched through Plaintiff's efforts on their behalf. Defendants each received and accepted those benefits, as well as Plaintiff's services.

27. Defendants have used, enjoyed, benefitted, retained and prospered those benefits they each received as a result of Plaintiff's efforts, but Defendants have never paid any compensation to Plaintiff (or even reimbursed Plaintiff for his out-of-pocket-expenses) for the benefits each Defendant received. Those benefits were provided by Plaintiff at Plaintiff's sole cost and expense.

28. More specifically, each respective Defendant was individually and *substantially* enriched and benefitted by and through the provision of Plaintiff's legal services, as follows:

(a) As a direct and intended result of the professional services Plaintiff provided on Defendant Cherkashin's behalf, Cherkashin became a controlling "manager" of the company. In that position, Cherkashin was able to prioritize and secure the judgment-creditor interests of Cherkashin and his group of Russian investors through an investment fund known as "Mindrock." Cherkashin used his position to control the company's financial priorities, reshape its marketing focus and business plan and prioritize both Mindrock's interests and Cherkashin's own (individual) financial interests in the company, valued at over $2,000,000—which Defendant Cherkashin believed would have been otherwise "lost" under Bell's continuing management and direction.

(b) Defendant Wood accepted, appreciated and benefitted by and through Plaintiff's

Bill Reed vs. Dan Huerter, Brock Wood and Pavel Cherkashin
Civil Action No. 1:23-cv-00720
Plaintiff's Second Amended Complaint                                           Page 10 of 15

services in at least two (2) ways—(a) as a 10% owner of the Company and (b) as a highly-compensated Manager having primary responsibility over the Company's financial management. Wood received a compensation package (i.e., created by Defendants, acting together) including of a six-figure salary in exchange for his part-time, remotely provided management services. On information and belief, Wood has also been positioned (again, by Defendants, acting together) to receive a 'bonus' of additional percentage ownership interests in the company under his compensation package.

(c) Defendant Huerter accepted, appreciated and benefitted by and through Plaintiff's services in several ways: First, he was placed in the position of being the Company's "Lead" Manager, with the highest percentage managerial interest (at 34%). Second, Huerter received a compensation package (i.e., created by Defendants, acting together) including of a six-figure salary in exchange for part-time, remotely provided management services. Third, (i.e., on information and belief), Huerter has also received a 'bonus' of (substantial) additional percentage ownership interests in the company, as part of Huerter's compensation package.

29. The benefits received by each Defendant directly resulted from Plaintiff's efforts, at Plaintiff's sole cost and expense. Defendants have continued to accept and enjoy those valuable benefits. Plaintiff contends that it would be inequitable for Defendants to retain the value of the benefits originally conferred, at Plaintiff's sole cost and expense, and that Plaintiff should receive a fair share of the value of benefits received by Defendants through Plaintiff's efforts.

Bill Reed vs. Dan Huerter, Brock Wood and Pavel Cherkashin
Civil Action No. 1:23-cv-00720
Plaintiff's Second Amended Complaint                                    Page 11 of 15

30. Plaintiff hereby sues for the amount(s) by which each of the Defendants have been unjustly enriched, as determined by the trier of fact in this case.

## COUNT II: QUANTUM MERUIT

31. Paragraphs 1 through 16, above, are incorporated herein by reference for all purposes, the same as if fully set forth at length herein *verbatim*.

32. There was no express contract between Plaintiff and the Defendants, but Plaintiff provided his services at the request and urging of each Defendant, and acted with the knowledge, permission and authority of each Defendant.

33. Defendants each had actual knowledge that Plaintiff expected to be paid for his services and out-of-pocket expenses, though no specific payment arrangements were defined. In addition to a fair compensation for Plaintiff's time and expenses, there were several discussions between Plaintiff and Defendants Huerter and Cherkashin, respectively, that the company would include Plaintiff in its future plans—either as an in-house General Counsel, an advisor, and even as an equity owner. More than once, Defendants promised to compensate Plaintiff for the Plaintiff's services and expenses and with the above-referenced ownership and professional-relationship opportunities, but Defendants have never paid *any* amounts, for any purpose, to Plaintiff.

34. During all relevant times, Plaintiff, who is licensed to practice law in several states, routinely charged hourly fee rates ranging between $350 and $400 per hour (when working against an 'evergreen' trust deposit)—the exact rate charged depending upon the prevailing rates in the place where the services were provided, the structure of the agreed billing arrangement and the Plaintiff's knowledge and experience in handling matters of a similar nature.

Bill Reed vs. Dan Huerter, Brock Wood and Pavel Cherkashin
Civil Action No. 1:23-cv-00720
Plaintiff's Second Amended Complaint                                    Page 12 of 15

35. During all relevant times, Plaintiff kept records of most (but not all) of the time he expended performing services for the Defendants' benefit, which reflect a total of 208 hours recorded by Plaintiff. Other hours were expended but not included in this total.

36. As noted above, there was no fee agreement between Plaintiff and Defendants, but there was an expectation on Plaintiff's part that he would be paid fairly and an expressed expectation on the part of Defendants that they would pay Plaintiff and that a significant part of Plaintiff's compensation might possibly consist of opportunities to serve the company in some future/undefined role.

37. Plaintiff would show that the reasonable and fair value of the billable hours he provided to Defendants, pursuing Defendants goals/objectives, would be no less than $400 per hour (i.e., in the absence of an evergreen trust deposit—and with the uncertainty of the timing of when Plaintiff could expect to receive payment) for the time Plaintiff expended on behalf of Defendants, and that Plaintiff would have accepted far less in exchange for "payment" in the form of the other (more valuable) opportunities referenced above.

38. Based upon the foregoing, (and in the alternative to the amount(s) by which the Defendants were each enriched—see Unjust Enrichment claim, above) Plaintiff seeks recovery of the reasonable value of all services provided to Defendants at a rate of no less than $400 per billable hour expended for every hour Plaintiff can show he expended, plus a reimbursement of all Plaintiff's expenses, plus pre-judgment and post-judgment interest upon all those amounts.

Bill Reed vs. Dan Huerter, Brock Wood and Pavel Cherkashin
Civil Action No. 1:23-cv-00720
Plaintiff's Second Amended Complaint                    Page 13 of 15

<u>Prayer for Relief</u>

Plaintiff respectfully prays for relief and recovery of the following:

A. the amount(s) by which each respective Defendant has been unjustly enriched by Plaintiff, as determined by the trier of fact in this case;

B. (in the alternative) the reasonable value of Plaintiff's fees and expenses (i.e., in relation to the total value of benefits conferred, received, accepted and enjoyed by each such Defendant, respectively), plus pre-judgment interest, at the highest rate(s) permitted by law, Post-judgment interest, each claim stated herein, and such other and further relief to which Plaintiff may show himself justly entitled, at law or in equity.

C. Plaintiff prays for general relief.

This 27th day of September 2023.

        Respectfully submitted,
        THE LAW OFFICES OF BILL REED

        BY: /s Bill Reed
        James William ("Bill") Reed
        P.O. Box 946
        Holly Springs, Georgia 30142
        Telephone:    480.227.9911
        Facsimile: 678-669-2897
        Email: billreedattorney@gmail.com

Bill Reed vs. Dan Huerter, Brock Wood and Pavel Cherkashin
Civil Action No. 1:23-cv-00720
Plaintiff's Second Amended Complaint        Page 14 of 15

Certificate of Service

A true and correct copy of the Plaintiff's Second Amended Complaint has, this day, been served upon each of the Defendants in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court.

This 27th day of September 2023.

By: /s Bill Reed, Plaintiff

Bill Reed vs. Dan Huerter, Brock Wood and Pavel Cherkashin
Civil Action No. 1:23-cv-00720
Plaintiff's Second Amended Complaint                                    Page 15 of 15