IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Gordon P. Gallagher

Civil Action No. 23-cv-00720-GPG-KAS

BILL REED,

    Plaintiff,

v.

DAN HUERTER,
BROCK WOOD, and
PAVEL CHERKASHIN,

    Defendants.

# ORDER

    Before the Court is Defendants' Motion for Summary Judgment (D. 55). Plaintiff Bill Reed (Plaintiff) is an attorney (*id.* at 2).[1] He represented Martha Martin, an equityholder in Pure Spectrum CBD, LLC (Pure Spectrum), in litigation against Pure Spectrum and its then-Chief Executive Officer and manager Brady Bell (*id.* at 2–3). During this representation, and at Ms. Martin's request, Plaintiff coordinated with certain Pure Spectrum insiders to remove Mr. Bell from his positions within Pure Spectrum (*see* D. 55-1 at 10). These efforts apparently succeeded; as a result, Defendants Dan Huerter, Brock Wood, and Pavel Cherkashin (collectively, Defendants) allegedly obtained management positions and collateral benefits (e.g., compensation packages, and in Defendant Cherkashin's case, favorable treatment as a Pure Spectrum creditor)

---

[1] Unless otherwise noted, the Court draws the operative facts from Defendants' Statement of Undisputed Material Facts and the exhibits Defendants appended in support of these facts (*see* D. 55 at 2–3).

1

(*see* D. 50 at 2–5). Plaintiff asked Pure Spectrum to compensate him for these efforts (*see* D. 55-1 at 4). And when it didn't, Plaintiff sued Defendants, claiming they are obligated to compensate him under multiple unjust enrichment theories (*see generally* D. 50). But it is undisputed that Plaintiff never formally represented Defendants or had any sort of express contractual relationship with them (*see id.* at 12 ("There was no express contract between Plaintiff and the Defendants . . . . ."); D. 55-1 at 13 (averring that Defendants never retained Plaintiff)). Plaintiff admitted as much in correspondence with Defendants:

> I expended somewhere between 80-100 hours, with no promise or assurance that I would ever actually receive payment, caucusing, listening, investigating, researching and consensus-building among the Company's *recently-'recognized'* owners and those, like Martha, who hold significant claims against the Company. I went to Colorado, mostly at my own expense (so far) to make sure Brady's 'ouster' was accomplished and to assist *you* in taking control of the Company. Everything went almost perfectly.

(D. 55-1 at 10).

Moreover, Plaintiff's communications with Pure Spectrum and Defendants confirm that Defendant viewed his efforts to oust Mr. Bell as part and parcel of his representation of Ms. Martin. In a cover letter to an invoice submitted to Pure Spectrum, Plaintiff explained:

> As Martha's attorney, I have long understood that the *only* way to achieve a fair and reasonable result for her [was] through the removal of Brady Bell as Pure Spectrum's CEO and sole manager. That's why I originally started looking for a way to do that. It so happens that was also the only way Pure Spectrum's minority owners would ever realize and achieve the value they bargained for was Brady's removal from the Company's leadership. I structured this bill with those realizations in mind. I charged 57% of my normal rate for time that Martha *may* benefit from (i.e., by having someone reasonable and fair with whom she can now negotiate her claims and, hopefully, reach a 'win-win' resolution), and I charged my standard rate for time which directly and immediately benefits those minority owners.

(*Id.* at 5).

2

And in an email to Defendants Huerter and Cherkashin, Plaintiff observed:

> First, I don't think I need to remind anyone that it is because of my efforts at Martha's request that you guys and Brock are now in the position to reap tremendous benefits from turning Pure Spectrum around. We built the critical consensus that was needed to rid the Company of Brady Bell and to appoint *you* as the Managers. **Every** stakeholder with whom I communicated agreed on two bedrock principles: (1) Brady needed to go, and (2) Dan Huerter is trusted by *everyone* who owns and interest and/or a claim against Pure Spectrum—and as long as Dan is leading the team, *everyone* feels confident that Pure Spectrum can still be saved and returned to a position of great promise.

(*Id.* at 10).

Defendants moved for summary judgment on the ground that Plaintiff may not recover from non-clients (like Defendants) on the unjust enrichment theories he asserts (*see* D. 55 at 8–10). Plaintiff did not respond to Defendants' motion. The Court agrees with Defendants that Plaintiff lacks any valid basis for recovering against Defendants. There is no genuine dispute as to any material fact. Defendants are entitled to judgment as a matter of law.[2]

Colorado law substantially limits the circumstances under which an attorney can recover a fee on an unjust enrichment theory. The general rule is that "attorney fees cannot be recovered absent an express statute, court rule, or private contract providing for them." *Brody v. Hellman*, 167 P.3d 192, 198 (Colo. App. 2007) (citing *Hawes v. Colo. Div. of Ins.*, 65 P.3d 1008, 1015 (Colo. 2003)). Colorado courts recognize only limited exceptions to this rule. They permit an attorney, in the context of a non-contingent fee arrangement, to recover on a quantum meruit theory when the attorney withdraws for a justifiable reason, or when the attorney-client relationship is

---

[2] Even if the Court did not find that summary judgment was warranted, it would be inclined to dismiss Plaintiff's claims *sua sponte* under Federal Rule of Civil Procedure 12(b)(6). Plaintiff's operative pleading confirms that he has no viable claims against Defendants for payment of attorney fees.

terminated without cause. *See Dudding v. Norton Frickey & Assocs.*, 11 P.3d 441, 446 (Colo. 2000). And in the context of a contingent fee arrangement, they permit quantum meruit recovery if the attorney is discharged before the litigation resolves (but only if the underlying agreement contemplates it), *see id.*, or if an attorney completes the representation, but his contract with his client turns out to be unenforceable, *see generally Mullens v. Hansel-Henderson*, 65 P.3d 992, 998 (Colo. 2002). On the undisputed facts, none of these theories applies—Plaintiff never had any sort of fee arrangement with Defendants.[3]

The only theory that Colorado courts recognize that would permit an attorney to recover from *non-clients* on unjust enrichment grounds appears to be the common fund doctrine. "The common fund doctrine applies when a plaintiff, either as an individual or a class representative, creates, increases, or preserves a monetary fund for the benefit of an ascertainable class of persons similarly situated." *Kuhn v. State*, 924 P.2d 1053, 1058 (Colo. 1996). The common fund doctrine is premised on "the equitable notion that those who have benefitted from [] litigation should share its costs." *Id.* (quoting Report of the Third Circuit Task Force, Court Awarded Attorney Fees, 108 F.R.D. 237, 250 (1985)). "Implicit in the doctrine are two requirements: (1) that all beneficiaries are similarly situated; and (2) that but for the plaintiff's actions, the beneficiaries would have been forced to institute [] litigation themselves in order to achieve any benefit." *Trevino v. HHL Fin. Servs., Inc.*, 945 P.2d 1345, 1347 (Colo. 1997).

---

[3] A key theme running through the cases permitting attorneys to recover against clients on quantum meruit theories is the importance of notice to the client that fees may be assessed on that basis. Here, Plaintiff did not signal that he intended to charge Defendants for the services he allegedly rendered. To the contrary, he conceded that he operated without any promise or assurance of payment.

4

Based on its review of Colorado caselaw on this issue, the Court observes that Colorado courts have only applied the common fund doctrine in litigation or similarly adversarial contexts. *See, e.g.*, *Trevino v. HHL Fin. Servs., Inc.*, 928 P.2d 766, 769 (Colo. App. 1996) ("Colorado cases applying the common fund doctrine have thus far done so only in class actions or in circumstances in which a subrogation relationship existed amongst the parties."); *Hawes v. Colorado Div. of Ins.*, 65 P.3d 1008, 1013 (Colo. 2003) (recognizing that advocacy in administrative proceedings may support recovery on a common fund theory). The Court doubts that Colorado courts would extend the doctrine to apply to a claim for reimbursement for professional services rendered outside of these contexts, particularly on the facts of the case here, where an unjust enrichment claim would essentially allow an attorney to circumvent conflict rules.[4]

There are other serious issues that render the common fund theory inapplicable to this case. Most significantly, the benefits Plaintiff allegedly secured for Defendants consist of management rights and employment benefits. These benefits do not constitute a "common fund." *See, e.g.*, Restatement (Third) of Restitution and Unjust Enrichment § 29 (2011) (defining "common fund" as "money or other property in which two or more persons (the 'beneficiaries') are entitled to share by reason of their common or parallel interests therein"). Without a common fund, recovery obviously cannot obtain on a common fund theory. *See id.* (recognizing that recovery on a common fund theory is only permitted where "liability will not oblige the beneficiary to make a net payment in cash"); *see also Clow v. Sissy Baby Sport Fishing, Inc.*, No. 09-20695-CIV, 2010

---

[4] The Court notes again that Plaintiff sued Pure Spectrum and sought to restructure Pure Spectrum to gain advantages in that litigation. This would seem to create an apparent conflict of interest between Plaintiff and Pure Spectrum's owners. The Court declines to recognize a rule that would permit an attorney who was conflicted out of a representation to perform that work anyway (without a waiver or any other sort of agreement) and then submit a bill to the party he could not represent.

5

WL 1687085, at *2 (S.D. Fla. Apr. 26, 2010) ("The Court does not need to examine all of these requirements [for common fund recovery] as Plaintiffs' counsel cannot even overcome the first—here, there is no common fund.").

Moreover, recovery on a common fund theory is generally appropriate only when the circumstances of the case would render contracting for services in advance impracticable. *See* Restatement (Third) of Restitution and Unjust Enrichment § 29 (2011) ("A beneficiary is liable . . . only if . . . liability will not impose an obligation that should properly have been the subject of contract between the claimant and the beneficiary."), cmt. b ("Where the nonclient beneficiary (and restitution defendant) is identifiable before the intervention takes place, the lawyer is under the same necessity as any other restitution claimant to justify the decision to proceed in the absence of contract."). Indeed, "[t]he usual result of failure to make a contract . . . is that benefits conferred on the defendant will be deemed gratuitous, or else 'incidental' to the pursuit of the claimant's other objectives." *Id.*, cmt. g. On the facts of this case, where Defendants constitute a small, discrete, and identifiable group, the Court does not find that Plaintiff can justify seeking payment from Defendants without any sort of contract.

Finally, as Plaintiff repeatedly acknowledged in his communications with Defendants, the benefits Plaintiff allegedly conferred on Defendants were merely incidental to the services he performed on behalf of his willing client, Ms. Martin. Plaintiff was presumably compensated for his representation of Ms. Martin on terms he agreed with her. And to the extent Plaintiff elected not to bill Ms. Martin for work he performed at her request, that was his choice. The Court is extremely skeptical of Plaintiff's efforts to recover from non-clients for services he performed on

Ms. Martin's behalf.  *See id.*, Reporter's Note cmt. g (citing cases precluding recovery based on incidental benefits rendered to non-clients).

Given that the undisputed facts defeat recovery on any potentially available unjust enrichment theory, Plaintiff's claims fail and Defendants are entitled to judgment as a matter of law.  Accordingly, Defendants' motion for summary judgment is GRANTED.  The Clerk of the Court shall enter judgment against Plaintiff and in favor of Defendants and close this case.

DATED October 8, 2024.

BY THE COURT:

Gordon P. Gallagher
United States District Judge